UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERGYS ESATI and RIGA OSEKU,<br><br>Plaintiffs,<br><br>-against-<br><br>JAY STREET PLACE CORP. d/b/a WATER STREET TAVERN, CORP., PEARL AND FRONT CORP. d/b/a LOS TACOS ALPASTOR, ARCHWAY ON WATER CORP. d/b/a ARCHWAY CAFÉ or TOMMY'S BAR & BURGER, WATER ST TAVERN, CORP. d/b/a LOVE AND DOUGH, and ARTHUR HASANI,<br><br>Defendants. | **No. 26 Civ. 7128**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Ergys Esati ("Esati") and Riga Oseku ("Oseku") (together, "Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of Defendants Jay Street Place Corp. d/b/a Water St. Tavern ("Water St. Tavern"), Pearl and Front Corp. d/b/a Los Tacos Al Pastor ("Los Tacos Al Pastor"), Archway on Water Corp. d/b/a Archway Cafe or Tommy's Bar & Burger ("Archway Cafe/Tommy's Bar"), Water St Tavern, Corp. d/b/a Love and Dough ("Love & Dough") (collectively, the "Corporate Defendants"), and Arthur Hasani (together with the Corporate Defendants, "Defendants"), allege:

## NATURE OF THE ACTION

1. Plaintiffs worked as front of house employees at a group of affiliated restaurants in Brooklyn, operated as a single integrated enterprise by Arthur Hasani under the trade names Water St. Tavern, Los Tacos Al Pastor, Archway Cafe/Tommy's Burger, Love and Dough. Throughout their employment, Plaintiffs regularly worked more than forty hours per workweek but were paid at the same straight-time hourly rate for all hours worked, including those over forty.

2. Defendants also failed to pay Plaintiffs spread-of-hours pay for the days on which their workdays spanned more than ten hours, retained gratuities belonging to Plaintiffs, failed to furnish Plaintiffs with wage notices at the time of hiring and with accurate wage statements with each payment of wages, and paid Plaintiffs more than seven days after their payment was due. Defendants also did not pay Plaintiff Esati minimum wages during his period of employment from approximately March 2019 to April 2021.

3. Plaintiffs bring this action to recover unpaid minimum and overtime wages, unpaid spread-of-hours pay, unlawfully retained gratuities, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 190 *et seq.* and § 650 *et seq.* ("NYLL"), including the NYLL's Wage Theft Prevention Act ("WTPA").

## JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

5. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 because the events and omissions giving rise to Plaintiffs' claims occurred in Kings County, within this District.

## THE PARTIES

**Plaintiff Ergys Esati**

6. Ergys Esati resides in Brooklyn, New York.

7. Esati worked for Defendants from approximately March 2019 to April 2021,

and then again from approximately end of June 2025 to August 8, 2026.

8. In addition to serving, Esati performed the duties of a busboy, food runner, and bartender, and performed inventory and cleaning work, at the restaurants operated by Defendants.

**Plaintiff Riga Oseku**

9. Riga Oseku resides in Brooklyn, New York.

10. Oseku worked for Defendants as a server, bartender, and cashier from approximately May 2025 to July 2026.

**Defendant Jay Street Place Corp. d/b/a Water Street Tavern**

11. Defendant Jay Street Place Corp. is a New York corporation that does business as Water Street Tavern with an address at 71 Jay St., Brooklyn, New York 11201.

12. Jay Street Place Corp. owns and operates one or more of the restaurants at which Plaintiffs were employed and issued paychecks to Plaintiffs.

13. Jay Street Place Corp. is an "enterprise engaged in commerce" within the meaning of the FLSA.

14. Jay Street Place Corp. has employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

15. In each of the three years preceding the filing of this Complaint, Jay Street Place Corp.'s annual gross volume of sales made or business done, individually and collectively with the other Corporate Defendants, exceeded $500,000.

**Defendant Pearl and Front Corp. d/b/a Los Tacos Al Pastor**

16. Defendant Pearl and Front Corp. is a New York corporation that does business as Los Tacos Al Pastor at 141 Front Street, Brooklyn, New York 11201.

17. Pearl and Front Corp. owns and operates one or more of the restaurants at

which Plaintiffs were employed and issued paychecks to Plaintiffs.

18. Pearl and Front Corp. is an "enterprise engaged in commerce" within the meaning of the FLSA.

19. Pearl and Front Corp. has employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

20. In each of the three years preceding the filing of this Complaint, Pearl and Front Corp.'s annual gross volume of sales made or business done, individually and collectively with the other Corporate Defendants, exceeded $500,000.

**Defendant Archway on Water Corp. d/b/a Archway Café or Tommy's Bar & Burger**

21. Defendant Archway on Water Corp. is a New York corporation that did business as Archway Café and now does business as Tommy's Bar and Burger with an address at 57 Pearl Street, Brooklyn, New York 11201.

22. Archway on Water Corp. owns and operates one or more of the restaurants at which Plaintiffs were employed and issued paychecks to Plaintiffs.

23. Archway on Water Corp. is an "enterprise engaged in commerce" within the meaning of the FLSA.

24. Archway on Water Corp. has employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

25. In each of the three years preceding the filing of this Complaint, Archway on Water Corp.'s annual gross volume of sales made or business done, individually and collectively with the other Corporate Defendants, exceeded $500,000.

**Defendant Water St. Tavern, Corp. d/b/a Love and Dough**

26. Defendant Water St. Tavern, Corp. is a New York corporation that does business as Love and Dough with an address at 57 Pearl Street, Brooklyn, New York 11201.

27. Water St. Tavern, Corp. owns and operates one or more of the restaurants at which Plaintiffs were employed and issued paychecks to Plaintiffs.

28. Water St. Tavern, Corp. is an "enterprise engaged in commerce" within the meaning of the FLSA.

29. Water St. Tavern, Corp. has employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

30. In each of the three years preceding the filing of this Complaint, Water St. Tavern, Corp.'s annual gross volume of sales made or business done, individually and collectively with the other Corporate Defendants, exceeded $500,000.

**The Corporate Defendants Jointly Employed Plaintiffs**

31. Throughout Plaintiffs' employment, the Corporate Defendants have operated as a single integrated enterprise doing business as Water Street Tavern, Los Tacos Al Pastor, Archway Café/Tommy's Bar, and Love and Dough.

32. The Corporate Defendants share common ownership and management, share administrative and payroll functions, and share a common corporate address at 68 Jay Street, Brooklyn, New York 11201 according to the Office of the Secretary of State of New York.

33. Defendants control all of the restaurants' operations from an office located inside Tommy's Bar & Burger, located at 57 Pear Street, Brooklyn, New York 11201.

34. The restaurants operated by the Corporate Defendants are located in close

proximity to one another.

35. Plaintiffs performed work for the Corporate Defendants on an interchangeable basis, clocking in at one restaurant and performing work at another, and received their wages by checks issued by different Corporate Defendants for work performed at the same or different locations.

36. The Corporate Defendants are employers within the meaning of the FLSA and NYLL and employed Plaintiffs.

**Defendant Arthur Hasani**

37. Defendant Arthur Hasani, also known as Artur Hasani, is an owner and operator of the Corporate Defendants.

38. Throughout Plaintiffs' employment, Hasani exercised control over the day-to-day operations of the Corporate Defendants and over the terms and conditions of Plaintiffs' employment.

39. Hasani authorized the hiring and firing of employees at the restaurants, including Plaintiffs. For example, Hasani hired Esati and Oseku.

40. Hasani determined the wage rates of employees at the restaurants, including the wage rates of Plaintiffs.

41. Hasani determined the work schedules of employees at the restaurants, including the schedules of Plaintiffs, and directed their daily work assignments across the restaurants.

42. Hasani signed paychecks issued to Plaintiffs on behalf of the Corporate Defendants.

43. Hasani exercised sufficient control over the operations of the Corporate Defendants to be considered Plaintiffs' employer under the FLSA and NYLL.

**Defendants' History of Wage-and-Hour Litigation and Willful Conduct**

44. Defendant Hasani and his restaurants have repeatedly been the subject of federal wage-and-hour litigation in which judgments and settlements have been entered against them for the same or similar types of violations alleged in this Complaint:

a. *Lopez Rodriguez v. Archway On Pearl, Inc.*, No. 18-cv-02837 (VMS) (E.D.N.Y. Oct. 2018): Plaintiff alleged that Defendants did not pay him minimum and overtime wages, and withheld tips earned by plaintiff. A settlement for $15,000 was approved by this Court.

b. *Onofre-Moreno, v. Archway On Pearl, Inc.,* No. 18-cv-04440 (VMS) (E.D.N.Y. Sep. 6, 2019), ECF 28-1: Plaintiffs alleged that Defendants did not pay them minimum and overtime wages as well as spread-of-hours pay. This Court approved a settlement for $145,000. *Id.* at ECF No. 29.

c. *Amil v. Archway On Pearl, Inc.,* No. 19-cv-06059 (PK) (E.D.N.Y. June 29, 2026): Plaintiffs alleged that Defendants paid them $6 or $7 per hour for all hours worked including those over forty and that Defendants retained a portion of their tips. This Court approved a settlement for $70,000.

45. Despite these repeated settlements arising from the similar unlawful pay practices, Defendants have continued to fail to pay Plaintiffs minimum wages, overtime wages, and spread-of-hours pay, have continued to retain tips and gratuities belonging to them, and have continued to fail to furnish them with wage notices and accurate wage statements.

46. Defendants' conduct, as alleged in this Complaint, has therefore been knowing, intentional, willful, and in bad faith.

## FACTUAL ALLEGATIONS

47. Throughout their employment, Plaintiffs performed front-of-house restaurant work, including serving, bartending, bussing tables, and running food, at the restaurants operated by the Corporate Defendants.

48. Throughout their employment, Plaintiffs regularly worked more than forty hours per workweek and regularly worked shifts spanning more than ten hours in a

single day.

49. Defendants paid Plaintiffs at the same straight-time hourly rate for all hours worked each workweek, including for hours worked in excess of forty per workweek, and did not pay Plaintiffs an overtime premium of one and one-half times their regular rates of pay for those hours.

50. Defendants paid Plaintiffs their wages in part by check and in part in cash.

51. Defendants deducted thirty-minutes per day from Plaintiffs' time records despite Plaintiffs not always taking their meal or rest breaks.

60. Plaintiffs worked in positions in which they regularly provided service to the restaurants' customers and in which customers left gratuities.

61. Defendants required that gratuities be charged to customers, including by adding a fixed gratuity to customers' bills, but did not distribute those gratuities to Plaintiffs in 2025 and 2026.

62. Defendants regularly paid Plaintiffs their wages more than seven days after they were due to them.

63. For example, for the workweek of July 27, 2026 to August 2, 2026, Defendants paid Esati his wages on August 11, 2026, nine days after payment was supposed to be made.

64. Similarly, for the workweek of May 18 to May 24, 2026, Defendants paid Esati his wages on June 2, 2026, nine days after payment was supposed to be made.

65. Defendants did not provide Plaintiffs with a wage notice at the time of hiring, or whenever their rates of pay changed, as required by the NYLL and WTPA.

66. Defendants did not provide Plaintiffs with accurate wage statements with each payment of their wages. Defendants did not provide Plaintiffs with any paystubs.

67. Defendants' failure to provide Plaintiffs with wage notices and accurate wage statements concealed from Plaintiffs the rates of pay, hours worked, and gratuities to which they were entitled, and facilitated Defendants' failure to pay Plaintiffs their minimum wages, overtime wages, spread-of-hours pay, and gratuities due.

**Ergys Esati's Wages and Hours**

68. Esati first worked for Defendants from approximately March 2019 to April 2021. Esati did not work for Defendants due to the COVID-19 pandemic from approximately mid-March 2020 to August or September 2020.

69. From approximately March 2019 to April 2021, Esati typically worked approximately twelve hours per day, six days per week, for a total of approximately seventy-two hours per workweek

70. From approximately March 2019 to April 2021, Defendants paid Esati $7.50 or $8.00 per hour for all hours worked, including those in excess of forty.

71. Defendants did not provide Esati with a tip-credit notice.

72. From approximately March 2019 to April 2021, Defendants paid Esati his earned gratuities.

73. Esati worked again for Defendants from approximately the end of June 2025 to August 8, 2026.

74. Esati typically worked approximately twelve hours per day, five to six days per week, for a total of approximately sixty to seventy-two hours per workweek.

75. During this time, Esati typically worked shifts that began at approximately 10:45 a.m. and ended at approximately 11:00 p.m., but sometimes later.

76. From approximately June to July 2025, Defendants paid Esati $18 per hour for all hours worked, including for hours worked over forty per workweek.

77. From approximately August 2025 to January 2026, Defendants paid Esati $20 per hour for all hours worked, including for hours worked over forty per workweek.

78. From approximately February to July 2026, Defendants paid Esati $22 per hour for all hours worked, including for hours worked over forty per workweek.

79. During approximately the final three weeks of his employment, Defendants paid Esati $24 per hour for all hours worked, including for hours worked over forty per workweek.

**Riga Oseku's Wages and Hours**

80. From approximately May 2025 through June 2025, Oseku typically worked on Saturdays and Sundays, from approximately 11:30 a.m. to 11:00 p.m., but sometimes later each day.

81. From approximately July 2025 through September 2025, Oseku typically worked approximately six days per week, from approximately 11:30 a.m. to 11:00 p.m. each day, but sometimes later.

82. From approximately September 2025 through April 2026, Oseku typically worked Oseku typically worked Tuesday through Friday from approximately 4:00 p.m. to 11:00 p.m., and on Saturdays and Sundays from approximately 11:30 a.m. to 11:00 p.m., but sometimes later.

83. From approximately May +to July 2026, Oseku typically worked Thursday through Friday from approximately 4:00 p.m. to 11:00 p.m., and on Saturdays and Sundays from approximately 11:30 a.m. to 12:00 a.m., but sometimes later.

84. Oseku regularly worked shifts spanning more than ten hours in a single day.

85. From the start of her employment to approximately November 2025, Defendants paid Oseku $16.50 per hour for all hours worked, including for hours worked over forty per workweek.

86. From approximately December 2025 through April 2026, Defendants paid Oseku $17.50 per hour for all hours worked, including for hours worked over forty per workweek.

87. From approximately May 2026 to June 2026, Defendants paid Oseku $18.00 per hour for all hours worked, including for hours worked over forty per workweek.

88. Defendants did not pay Oseku an overtime premium for hours worked in excess of forty per workweek or spread-of-hours pay.

**FIRST CLAIM**
**(FLSA - Unpaid Overtime Wages)**

89. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

90. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs.

91. Defendants were required to pay Plaintiffs one and one-half times their regular hourly rates of pay for all hours worked in excess of forty per workweek pursuant to the overtime provisions of the FLSA, 29 U.S.C. § 207.

92. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the FLSA.

93. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

94. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

95. Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**SECOND CLAIM**
**(NYLL - Unpaid Overtime Wages)**

96. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

97. Pursuant to the NYLL and supporting New York State Department of Labor ("NYDOL") regulations, including 12 N.Y.C.R.R. § 146-1.4, Defendants were required to pay Plaintiffs one and one-half times their regular rates of pay for all hours worked in excess of forty per workweek.

98. Defendants are employers within the meaning of the NYLL §§ 190, 651, and 652, and supporting NYDOL regulations, and employed Plaintiffs.

99. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the NYLL and its supporting regulations.

100. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

101. Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**THIRD CLAIM**
**(NYLL – Unpaid Minimum Wages)**

102. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

103. The NYLL and its supporting New York State Department of Labor ("NYDOL") regulations require employers to pay employees at least the minimum wage rate for the first forty hours worked in a workweek. *See* N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146–1.2(a)(1)(i).

104. The minimum wage provisions of Article 19 of the NYLL and the supporting NYDOL Regulations apply to Defendants.

105. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff Esati's minimum hourly wages.

106. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover his unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs of the action.

**FOURTH CLAIM**
**(FLSA - Unlawful Retention of Tips)**

107. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

108. Defendants are employers within the meaning of 29 U.S.C. § 203(d) and employed Plaintiffs.

109. Pursuant to 29 U.S.C. § 203(m)(2)(B), an employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

110. Customers of the restaurants operated by Defendants left tips for Plaintiffs in recognition of the services Plaintiffs provided.

111. Defendants unlawfully kept tips received by Plaintiffs, in violation of 29 U.S.C. § 203(m)(2)(B) and 29 C.F.R. § 531.54.

112. Defendants willfully violated the FLSA by knowingly and intentionally keeping tips received by Plaintiffs.

113. Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of 29 U.S.C. § 203(m)(2)(B), Plaintiffs are entitled to recover all tips unlawfully kept by Defendants, an additional equal amount as liquidated damages, pre- and post-judgment

interest, and reasonable attorneys' fees and costs of the action.

**FIFTH CLAIM**
**(NYLL - Unlawful Retention of Gratuities)**

114. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

115. Pursuant to NYLL § 196-d, no employer or its agent shall demand or accept, directly or indirectly, any part of the gratuities received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.

116. Defendants unlawfully demanded, accepted, and retained gratuities belonging to Plaintiffs in violation of NYLL § 196-d.

117. As a result of Defendants' violations of NYLL § 196-d, Plaintiffs are entitled to recover their unlawfully retained gratuities, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**SIXTH CLAIM**
**(NYLL - Unpaid Spread-of-Hours Pay)**

118. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

119. Defendants willfully failed to pay Plaintiffs additional compensation of one hour's pay at the basic minimum hourly rate for each day on which they worked a spread of hours exceeding ten hours, in violation of the NYLL and its supporting NYDOL regulations, including 12 N.Y.C.R.R. § 146-1.6.

120. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid spread-of-hours pay, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**SEVENTH CLAIM**
**(NYLL - Failure to Provide Wage Notices)**

121. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

122. The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

123. In violation of NYLL § 195(1), Defendants failed to furnish Plaintiffs at the time of hiring, and whenever their rates of pay changed, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

124. As a result of Defendants' violations of NYLL § 195(1), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-b).

**EIGHTH CLAIM**
**(NYLL - Failure to Provide Accurate Wage Statements)**

125. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

126. The NYLL and WTPA require employers to provide employees with an accurate wage statement with each payment of wages.

127. In violation of NYLL § 195(3), Defendants failed to provide Plaintiffs with a wage statement with each payment of wages accurately listing, among other things, the regular and overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

128. As a result of Defendants' violations of NYLL § 195(3), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

**NINTH CLAIM**
**(NYLL § 191 – Frequency of Payments)**

129. Plaintiffs repeat and incorporate all foregoing paragraphs.

130. Defendant is an "employer" of Plaintiffs under Article 6 of the NYLL

131. As Plaintiffs' employer, Defendant is subject to and must abide by the frequency of pay provision of NYLL § 191.

132. Defendant paid Plaintiffs more than seven days after payment was due.

133. In the last six years and 228 days, Plaintiffs spent more than 25% of their working time performing work tasks of a physical nature.

134. Defendant did not require Plaintiffs to obtain specialized degrees, education, or other schooling to perform their primary work duties.

135. Plaintiffs were non-exempt employees who did not hire, fire, direct the work duties, decide the wages, or determine the work schedules of other employees at The Four Seasons.

136. Plaintiffs are Defendant's employees within the meaning of Article 6 of the NYLL.

137. Plaintiffs were "manual workers" within the meaning of NYLL § 191(1)(a)(i).

138. Defendant paid Plaintiffs their wages due "later than seven calendar days after the end of the week in which the wages were earned," in violation of the NYLL. *See* N.Y. Lab. L. § 191(1)(a).

139. Because Defendant failed to pay Plaintiffs on a weekly basis, in violation of

NYLL § 191(1)(a), they are entitled under NYLL § 198(1–a) to recover liquidated damages

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a. declare that Defendants have violated the minimum and overtime wage provisions of the FLSA and the NYLL and supporting regulations;

b. declare that Defendants have violated the spread-of-hours provision of the NYLL and supporting regulations;

c. declare that Defendants have violated the tip provisions of the FLSA and the gratuity provisions of the NYLL;

d. declare that Defendants have violated the wage notice and wage statement provisions of the NYLL and WTPA;

e. declare that Defendants have violated the timely pay provisions of the NYLL;

f. declare that Defendants' violations of the FLSA and NYLL were willful;

g. award Plaintiffs their unpaid minimum and overtime wages;

h. award Plaintiffs their unpaid spread-of-hours pay;

i. award Plaintiffs their unlawfully retained gratuities;

j. award Plaintiffs liquidated damages pursuant to the FLSA and the NYLL;

k. award Plaintiffs statutory damages as a result of Defendants' failure to furnish them with wage notices upon hiring and accurate wage statements with each payment of wages, in violation of the NYLL and WTPA;

l. award Plaintiffs pre- and post-judgment interest under the NYLL;

m. award Plaintiffs reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

n. award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
November 4, 2026

PECHMAN LAW GROUP PLLC

By: ______________________

Louis Pechman
Miguel Tapia Colin
Pechman Law Group PLLC
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
tapiacolin@pechmanlaw.com

*Attorneys for Plaintiffs*